UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____

KASSEM ALMAKALANI, *et al.*,

                Plaintiffs,

      -against-

KEVIN MCALEENAN, *et al.*,

                Defendants.
_____

**MEMORANDUM & ORDER
18-CV-398 (NGG) (CLP)**

NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiffs are 47 citizens and legal permanent residents ("LPRs") of the United States and 86 of their family members, who are citizens of Yemen seeking to lawfully immigrate to the United States. (Am. Compl. (Dkt. 31) ¶¶ 1, 13-153; Gov't Mem. in Supp. of Mot. for Summ. J. and Mot. to Dismiss ("Mem.") (Dkt. 66) at 1.) The U.S. citizen and LPR plaintiffs ("Plaintiff-Petitioners") have petitioned on behalf of the Yemeni plaintiffs to whom they are related ("Plaintiff-Beneficiaries") by filing Form I-130 Petitions for Alien Relatives with U.S. Citizenship and Immigration Services ("USCIS"). (Am. Compl. ¶¶ 1-2.) Plaintiffs allege that the adjudication of their petitions has been unduly and unreasonably delayed as a result of "intentional and discriminatory practices, procedures, policies, and programs enacted to stymy and prevent Yemeni Muslim immigration to the United States." (*Id*. ¶ 8.) They seek various remedies, including a writ of mandamus compelling the adjudication of their petitions; injunctive relief pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 et seq.; declaratory relief under the Declaratory Judgment Act, 28 U.S.C. § 2201 et seq.; damages and injunctive relief pursuant to the alleged violation of their constitutional rights under the First Amendment and Fifth Amendment; and damages and injunctive relief pursuant to 42 U.S.C. § 1985, which prohibits conspiracies to interfere with civil rights. (*Id*. ¶¶ 512-77.)

Pending before the court is Defendants' motion for summary judgment on Plaintiffs' APA claims and for dismissal of Plaintiffs' remaining claims for lack of subject matter jurisdiction and failure to state a claim. (*See* Mem.; Pls.' Resp. in Opp. to Mot. for Summ. J. and Mot. to Dismiss ("Opp.") (Dkt. 67); Gov't Reply Mem. ("Reply") (Dkt. 68).) Also pending is Plaintiffs' appeal of Chief Magistrate Judge Cheryl L. Pollak's March 17, 2020 order denying Plaintiffs' motion for additional discovery and November 24, 2020 order denying Plaintiffs' motion for reconsideration of the March 17, 2020 order. (*See* Pls.' Appeal of Magistrate Judge Decision ("Appeal Mem.") (Dkt. 86); Gov't Mem. in Opp. to Appeal ("Appeal Opp.") (Dkt. 87); Pls.' Reply in Supp. of Appeal ("Appeal Reply") (Dkt. 88).)

For the reasons explained below, Defendants' (Dkt. 66) Motion for Summary Judgment and Motion to Dismiss is GRANTED with prejudice, and Plaintiffs' (Dkt. 86) Appeal of Judge Pollak's orders regarding discovery is DENIED as moot.

## I.   BACKGROUND

### A.  Factual Background

#### 1.   Form I-130 Petitions and Yemen Guidance

The Immigration and Nationality Act ("INA") grants the Department of Homeland Security the authority to adjudicate immigration petitions. (Am. Compl. ¶ 449; Mem. at 4.) Under the INA and its implementing regulations, a U.S. citizen or LPR may petition for an alien relative to be deemed eligible for an immigrant visa by filing a Form I-130 Petition for Alien Relative ("Form I-130 petition"). (Am. Compl. ¶ 450; Mem. at 4.) U.S. citizens may petition on behalf of their spouses, parents, children, and siblings, while LPRs may petition only on behalf of their spouses and unmarried children. (Mem. at 4-5.) The purpose of

Form I-130 is to establish the existence of a qualifying relationship between the U.S. citizen or LPR petitioner and the alien beneficiary. (*Id.* at 4.) USCIS, which adjudicates Form I-130 petitions, will approve them if the petitioner's status as a U.S. citizen or LPR, the beneficiary's qualifying relationship to the petitioner, and (in the case of spousal petitions) the bona fides of the marriage are satisfactorily established. (*Id.* at 5-6.)

A Form I-130 petitioner bears the burden of establishing the beneficiary's eligibility by a preponderance of the evidence. (*Id.* at 5; Am. Compl. ¶ 451.) To the extent possible, Form I-130 petitions must be supported by primary evidence, such as official birth, death, adoption, and marriage certificates issued by the beneficiary's home government. (Am. Compl. ¶ 452; Mem. at 5.) *See* 8 C.F.R. §§ 204.1(f)(1), 204.2. The INA's implementing regulations provide that the unavailability of primary evidence creates a presumption of ineligibility. *Id.* § 103.2(b)(2)(i). Secondary evidence, which includes non-governmental records, affidavits, and scientific evidence, may be submitted to rebut the presumption of ineligibility if primary evidence is unavailable. (Mem. at 5; Am. Compl. ¶ 453.) In adjudicating Form I-130 petitions, USCIS has the discretion to determine what supporting evidence is credible and what weight to ascribe to it. 8 C.F.R. § 204.1(f)(1). If USCIS cannot approve a petition based on the evidence submitted, it may require petitioners and beneficiaries "to appear for an interview and/or biometric collection." *Id.* § 103.2(b)(9).

In September 2009, the State Department and its embassy in Sana'a, Yemen documented findings regarding the reliability of primary evidence submitted in connection with Form I-130 petitions on behalf of Yemeni beneficiaries in a confidential diplomatic cable. (Mem. at 11.) The State Department observed that in Yemen, official records are not created contemporaneously with life events such as birth, death, marriage, and divorce; rather, "court judgments" based on witness testimony are issued

retrospectively to meet requests for such documentation. (*Id.*) The State Department concluded that court judgments from Yemen are particularly susceptible to error or fraud for this reason, and it directed USCIS adjudicators to give Yemeni court judgments no more weight than affidavits—in other words, to treat them as secondary rather than primary evidence. (*Id.* at 11-13.) As a result, primary evidence is categorically unavailable for Form I-130 petitions on behalf of Yemeni beneficiaries, and therefore such beneficiaries are presumptively ineligible for immigration visas. *See* 8 C.F.R. § 103.2(b)(2)(i).

Beginning in 2008, even before the State Department diplomatic cable was issued, USCIS officials considered what additional information they should require of Yemeni Form I-130 applicants in order to overcome the presumption of ineligibility. (Mem. at 14-15.) On May 25, 2012, USCIS issued a policy memorandum entitled "Supplemental Guidance for Adjudicating Family-Based Petitions Supported by Relationship Documents Actually or Purportedly Issued by a Civil Authority in Yemen" (the "Yemen Guidance"). (*Id.* at 15.) The Yemen Guidance introduced revisions to relevant portions of USCIS's Adjudicator's Field Manual. (Certified Administrative Record ("AR") (Dkt. 37-1) at 001-09.) The Yemen Guidance explains that "USCIS is aware that civil documents purportedly or actually issued in Yemen to establish claimed familial relationships … are generally based on information furnished by an interested party" and that, at the direction of the State Department, USCIS therefore "regards these documents as insufficient to establish claimed familial relationships under a preponderance of the evidence standard, without additional evidence to corroborate the relationship." (*Id.* at 001.) It goes on to state that "the use of all available methods to evaluate the *bona fides* of the claimed familial relationship(s) is reasonable and necessary." (*Id.* at 002.)

4

The Yemen Guidance sets forth procedures for requesting additional corroborating evidence to assist in the adjudication of Form I-130 petitions supported by Yemeni documents, including that USCIS must invite the voluntary submission of DNA evidence but may not make such evidence mandatory or treat a petitioner's decision not to submit DNA evidence as "derogatory." (*Id*. at 003.) USCIS may approve petitions on the basis of DNA evidence or, alternatively, on the basis of additional secondary evidence (such as school records, medical records, and religious records) *and* an interview. (*Id*.) The Yemen Guidance provides that petitions on behalf of Yemeni beneficiaries may not be favorably adjudicated without either DNA test results or an interview of the petitioner. (*Id*.) A petitioner who declines to submit DNA evidence and receives a Notice of Intent to Deny ("NOID") her petition must be given an additional opportunity to submit DNA evidence prior to final adjudication. (*Id*. at 003-04.)

Plaintiffs allege that the protocols outlined in the Yemen Guidance hold Form I-130 petitions on behalf of Yemeni beneficiaries to a higher standard of proof than petitions on behalf of non-Yemeni beneficiaries. (Am. Compl. ¶¶ 457, 460.) They further allege that the policies and procedures for adjudicating Yemeni Form I-130 petitions were "enacted to stymy and prevent Yemeni Muslim immigration to the United States of America" and discriminate against Yemeni petitioners and beneficiaries on the basis of their race, religion, and national origin. (*Id*. ¶¶ 458, 468.) They contend that these policies and practices are the result of a conspiracy between the Defendants—all members of former President Donald J. Trump's administration, including former President Trump himself—to halt Yemeni Muslim immigration to the United States. (*Id*. ¶¶ 480, 484-506.)

2. Plaintiffs' Form I-130 Petitions

Plaintiffs are 136 individuals who identify as "Yemeni nationals and [the U.S. Citizen and LPR] family members petitioning on their behalf." (*Id*. ¶¶ 1, 13-153.) They allege that they all have Form I-130 petitions pending which are "ripe for adjudication," but that adjudication of their petitions has been unfairly delayed due to Defendants' discriminatory policies and practices. (*Id*. ¶¶ 2, 8, 167, 173, 179, 185, 191, 197, 203, 209, 215, 221, 227, 233, 239, 245, 251, 257, 263, 269, 275, 281, 287, 293, 299, 305, 311, 317, 323, 328, 334, 340, 346, 352, 358, 364, 370, 376, 382, 388, 394, 400, 406, 412, 418, 424, 430, 436, 442, 448.) Defendants have identified 87 petitions brought by or on behalf of Plaintiffs, which account for 133 of the Plaintiffs: 47 Plaintiff-Petitioners and 86 Plaintiff-Beneficiaries.[1] (Mem. at 17; Decl. of Timothy Houghton ("Houghton Decl.") (Dkt. 66-2) ¶¶ 13-15.)

Defendants contend, and Plaintiffs appear to concede, that as of June 28, 2019 (when Defendants served their Reply memorandum) 76 of the 87 petitions filed by or on behalf of Plaintiffs had already been adjudicated, and that 49 of those 76 petitions were approved. (Mem. at 17-18; Opp. at 16; Reply at 13-14.) Of the remaining eleven petitions, two are "immediate relative petitions," meaning that the Plaintiff-Beneficiaries are parents, spouses, or unmarried children of U.S. citizen Plaintiff-Petitioners, who could presumably obtain a visa in short order following the approval of their petitions. (Mem. at 4-5, 8, 26-27; Reply at 13-14.) Defendants indicated that as of June 28, 2019, those two petitions, one of which had previously been delayed due to the petitioner's incarceration, were nearing final adjudication.

---

[1] Defendants indicate that they are unable to identify the petitions associated with three plaintiffs. (Houghton Decl. ¶ 15.) Several Plaintiff-Petitioners have petitioned on behalf of multiple Plaintiff-Beneficiaries, and one Plaintiff-Beneficiary is the subject of two petitions. (Mem. at 17.)

(Mem. at 19; Reply at 14.) The other nine pending petitions are "family-preference petitions," meaning that the Plaintiff-Beneficiaries are either siblings or married children of U.S. citizen petitioners or relatives of LPR petitioners. (Mem. at 4-5, 26-27; Reply at 13-14.) Limited immigrant visas are available for beneficiaries of family-preference petitions, and visas are issued based on the petition's submission date, regardless of the length of time the petitions are pending prior to approval. (Mem. at 8-9.) Defendants contend, and Plaintiffs do not dispute, that based on their relatively recent priority dates, the nine pending family-preference petitions would not yet have resulted in the issuance of visas even if they had been fully and favorably adjudicated.[2] (Mem. at 18; Reply at 14-15.)

### B. Procedural History

Plaintiffs filed their initial complaint on January 19, 2018 and their amended complaint on June 6, 2018. (*See* Compl. (Dkt. 1); Am. Compl.) Plaintiffs seek to compel USCIS to adjudicate their petitions by bringing claims for a writ of mandamus and for injunctive relief under the APA. (Am. Compl. ¶¶ 512-30.) They also seek a declaratory judgment that Defendants' alleged delay in adjudicating Plaintiffs' petitions violated federal law. (*Id.* ¶¶ 531-35.) Plaintiffs also claim that Defendants' policies and practices with respect to adjudicating their petitions are unlawful under the APA. (*Id.* ¶¶ 521-30.) They further seek to establish that Defendants' policies and practices with respect to their Form I-130 petitions have violated their Fifth Amendment rights to procedural due process, substantive due process, and equal protection, as well as their rights under the Establishment Clause of the First

---

[2] The pending family-preference petitions have priority dates between 2015 and 2017. In several cases, the applicable visas are available only to Form I-130 beneficiaries with priority dates more than a decade prior to the priority dates of the Plaintiff-Beneficiaries. (*See* Mem. at 18.)

Amendment. (*Id*. ¶¶ 536-59.) Finally, Plaintiffs claim that Defendants' conduct amounts to a conspiracy to interfere with their civil rights, in violation of 42 U.S.C. § 1985. (*Id*. ¶¶ 560-77.)

On March 28, 2019, Defendants filed their fully briefed motion to dismiss the amended complaint and for summary judgment. Defendants seek summary judgment on Plaintiffs' APA claims and seek the dismissal of Plaintiffs' other claims for lack of subject matter jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(1), and for failure to state a claim for relief, pursuant to Fed. R. Civ. P. 12(b)(6). (*See* Mem. at 3-4.)

On August 12, 2019, Plaintiffs filed a fully briefed motion seeking discovery, including USCIS training documents, documents relating to the formulation of the Yemen Guidance, unredacted copies of USCIS internal policy memoranda, and materials related to USCIS's adjudication of non-Yemeni Form I-130 petitions, for comparative purposes. (March 13, 2020 Mem. & Order ("Discovery M&O") (Dkt. 75) at 4-5; Mot. for Discovery (Dkt. 71).) Defendants opposed the motion on the grounds that discovery is not proper in APA challenges, because the district court's role is limited to reviewing the reasonableness of agency decisions based on the administrative record and does not encompass the court's usual factfinding function. (Defs.' Mem. in Opp. to Mot. for Discovery (Dkt. 72) at 1.) Plaintiffs argued that discovery beyond the administrative record was appropriate because, in addition to their APA claim, they had raised several constitutional challenges. (Mot. for Discovery at 6-8.) In a March 13, 2020 Memorandum and Order, Chief Magistrate Judge Cheryl L. Pollak denied Plaintiffs' Motion for Discovery, concluding that Plaintiffs had not established the need for additional discovery beyond the scope of the administrative record. (Discovery M&O at 9, 15, 18.)

On March 26, 2020, Plaintiffs moved for reconsideration of Judge Pollak's order denying their Motion for Discovery. (*See* Mot. for Recons. (Dkt. 76); Defs.' Resp. in Opp. to Mot. for Recons. ("Recons. Opp.")(Dkt. 77); Pls.' Reply (Dkt. 78).) On November 24, 2020, Judge Pollak issued a Memorandum and Order denying Plaintiffs' motion. (Nov. 24, 2020 Mem. & Order ("Recons. M&O") (Dkt. 83).) Plaintiffs subsequently filed an appeal of Judge Pollak's decision to this court, pursuant to Rule 72 of the Federal Rules of Civil Procedure. (*See* Appeal Mem.)

## II.   LEGAL STANDARD

### A.  Fed. R. Civ. P. 12(b)(1)

Under Rule 12(b)(1), a district court must dismiss a case when it "lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).[3] In reviewing a motion to dismiss under Rule 12(b)(1), the court must accept all material factual allegations in the complaint as true, *see Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998), but should not draw "argumentative inferences favorable to the party asserting jurisdiction*." Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.*, 968 F.2d 196, 198 (2d Cir. 1992) (citing *Norton v. Larney*, 266 U.S. 511, 515 (1925)). The court may refer to evidence outside the pleadings. *See Makarova*, 201 F.3d at 113 (citing *Kamen v. American Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986) (stating that "evidentiary matter may be presented by affidavit or otherwise" under a Rule 12(b)(1) motion)). The non-moving party bears the burden of showing, by a preponderance of the evidence, that the court has subject matter jurisdiction over its claims. *See id*.

---

[3] When quoting cases, and unless otherwise noted, all citations and quotation marks are omitted, and all alterations are adopted.

### B.  Fed. R. Civ. P. 12(b)(6)

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint must contain facts that do more than present a "sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. To decide a defendant's motion to dismiss, the court "will accept all factual allegations in the [c]omplaint as true and draw all reasonable inferences in [Plaintiffs'] favor." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 429 (2d Cir. 2011). However, the court will "identify[] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. The court must then evaluate the "well-pleaded factual allegations" and "determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. This plausibility analysis "does not impose a probability requirement at the pleading stage," but requires the complaint to provide "enough fact to raise a reasonable expectation that discovery will reveal evidence of illegality." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Twombly*, 550 U.S. at 556).

### C.  Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(a). "The role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried. In determining whether summary judgment is appropriate, this [c]ourt will construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all

10

reasonable inferences against the movant." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011).

"Where a party seeks review of agency action under the APA, the district judge sits as an appellate tribunal and the entire case on review is a question of law." *Brezler v. Mills*, 220 F. Supp. 3d 303, 321 (E.D.N.Y. 2016). Summary judgment determinations are "generally appropriate in APA cases because the question of whether an agency's decision is arbitrary and capricious is a legal issue amenable to summary disposition." *Id.*

### D.  Fed. R. Civ. P. 72 Appeal

Under Rule 72(a) of the Federal Rules of Civil Procedure, a magistrate judge's order regarding a non-dispositive pretrial matter "will be modified or set aside by the district judge assigned to the case only where the order is clearly erroneous or contrary to law." *Travel Sentry, Inc. v. Tropp*, 669 F. Supp. 2d. 279, 283 (E.D.N.Y. 2009). "Matters concerning discovery are generally considered 'nondispositive' of the litigation." *Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522, 525 (2d Cir. 1990). The district court considers objections to a magistrate judge's order on a non-dispositive matter "as an appeal from that order." *Travel Sentry*, 669 F. Supp. 2d at 283. An order "is clearly erroneous only when the reviewing court, based on the entire evidence, is left with the definite and firm conviction that a mistake has been committed." *Id.* (quoting *Concrete Pipe and Prods. Of Cal., Inc. v. Constr. Laborers Pension Trust for South Cal.*, 508 U.S. 602, 622 (1993)). "An order is contrary to law when it fails to apply or misapplies relevant statutes, case law or rules of procedure." *Id.* Pursuant to this highly deferential standard of review, magistrate judges are afforded broad discretion in resolving discovery disputes, and reversal is appropriate only if that discretion is abused. *Id.*

## III.   DISCUSSION

### A.  APA Claim

Plaintiffs seek judicial review of USCIS adjudication policies pursuant to the APA, 5 U.S.C. § 701, et. seq. (Am. Compl. ¶¶ 521-30.) Plaintiffs argue that the Yemen Guidance should be set aside on the grounds that it is "arbitrary, capricious, an abuse of discretion, or not otherwise in accordance with law" and "without observance of procedure required by law." *See* 5 U.S.C. § 706(2)(A), (D). They also ask the court to direct the expedited adjudication of their petitions, consistent with its authority under the APA to "compel agency action unlawfully withheld or unreasonably delayed." *See id.* § 706(1). As explained below, the court finds that Plaintiffs have failed to establish that the Yemen Guidance is unlawful under any of these provisions of the APA.

#### 1.  Section 706(2)(A)

Under the APA, a reviewing court must "hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). The agency is required to "articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). Agency action is arbitrary and capricious if "the agency has relied on factors Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Nat. Res. Def. Council v. U.S. E.P.A.*, 658 F.3d 200, 215 (2d Cir. 2011).

The scope of a reviewing court's inquiry is "narrow." *Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2569 (2019). The court "defer[s] to an agency's determinations so long as the agency gives adequate reasons for its decisions, in the form of a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Nat. Res. Def. Council, Inc. v. U.S. Envtl. Prot. Agency*, 961 F.3d 160, 170 (2d Cir. 2020). When reviewing agency action that represents a change to agency policy, a reviewing court generally applies this same standard. *See id.* Agencies "are free to change their existing policies as long as they provide a reasoned explanation for the change," but the agency "must at least display awareness that it is changing position and show that there are good reasons for the new policy." *Encino Motorcars, LLC v. Navarro*, 136 S. Ct. 2117, 2125-26 (2016).

Plaintiffs do not dispute Defendants' claim that the civil records available to Yemeni applicants are particularly susceptible to error or fraud because they are not created contemporaneously with the events that they purport to document. The administrative record provides ample corroboration for the unreliability of Yemeni public records. For example, in 2008, a USCIS Benefit Fraud and Compliance Assessment found a 45% rate of fraud among Yemeni I-130 applications, and USCIS officers commented that they had long struggled to adjudicate Yemeni petitions through a paper process alone. (AR at 027.) A technical report from the United Nations in 2009 cited a 2003 survey of Yemen's civil registration system, which found that only 39% of births and 13% of deaths were catalogued. (*Id.* at 042.)

In light of the undisputed, well documented conclusion that Yemeni civil records are often inaccurate or unreliable, USCIS officials had a sound factual basis for their conclusion that such records, taken alone, were "insufficient to establish claimed familial relationships under a preponderance of the evidence standard" — or,

in other words, that they were not sufficiently reliable to consti-
tute primary evidence of a qualifying familial relationship. (*Id.* at
001.) The presumption of ineligibility, which Plaintiffs character-
ize as grounded in discriminatory animus, in fact follows directly
from the application of that conclusion to the INA's implementing
regulation, which provides that "[t]he non-existence or other un-
availability of required evidence" such as official marriage
licenses or birth certificates "creates a presumption of ineligibil-
ity." 8 C.F.R. § 103.2(b)(2)(i).

Moreover, the stated objective and function of the Yemen Guid-
ance is not to disqualify Form I-130 petitions on behalf of Yemeni
nationals, but rather to establish and standardize the means by
which petitioners may rebut the presumption of ineligibility—a
presumption that arises not from the Yemen Guidance, but rather
from the regulations providing that applications without primary
evidence are presumptively ineligible and the State Department
guidance that Yemeni court judgments do not constitute primary
evidence. Starting from the uncontested premise that Yemeni
civil records are unreliable, the additional procedures set forth by
the Yemen Guidance for gathering supporting evidence and ad-
judicating Yemeni Form I-130 petitions are rational. Accordingly,
the court finds that USCIS's changed policies and practices in ad-
judicating Yemeni Form I-130 Petitions, as set forth in the Yemen
Guidance, are neither arbitrary nor an abuse of discretion.

Nor is the Yemen Guidance contrary to law. Plaintiffs contend
that USCIS has replaced the INA's "preponderance of the evi-
dence" burden of proof with an elevated "fraudulent until proven
otherwise" standard for Yemeni applicants. (Am. Compl. ¶¶ 460-
61; Mem. at 8.) The court recognizes that, as a practical matter,
the procedures set forth in the Yemen Guidance impose a height-
ened evidentiary burden on Yemeni beneficiaries and their
family-member petitioners, relative to applicants who may be
able to able to establish eligibility through primary evidence. But

Plaintiffs have not established that their petitions are held to a different standard than other petitions for which primary evidence is unavailable; nor have they established that petitions, like theirs, which are evaluated on the basis of secondary evidence are held to a higher burden of proof, as opposed to a distinct evidentiary burden. Because Form I-130 petitioners bear the burden of establishing eligibility, *all* beneficiaries are treated as presumptively ineligible, regardless of their country of origin, and all petitioners are given an opportunity to rebut that presumption through the production of evidence. *See* 8 C.F.R. § 103.2(b)(1). In adjudicating Form I-130 petitions, USCIS is authorized by regulation to request original documentation, take testimony, direct investigation, and request additional evidence in order to determine eligibility. *See* 8 CFR §§ 103.2(b)(5), (7), (8). USCIS also retains the "sole discretion" to determine "what evidence is credible and the weight to be given that evidence." *Id.* § 204.1(f)(1). Thus, contrary to Plaintiffs' argument, the procedures and policies set forth in the Yemen Guidance appear to be consistent with USCIS's legal authority and in accordance with law.

### 2. Section 706(2)(D)

Plaintiffs also contend that that the court may set aside the Yemen Guidance on the ground that it is "without observance of procedure required by law." 5 U.S.C. § 706(2)(D). Under the APA, an agency generally must use notice-and-comment procedures to make any "rule." 5 U.S.C. § 553. The APA exempts from this requirement, however, "general statements of policy," among other types of agency action that are sometimes collectively referred to as "non-legislative rules." *Id.* § 553(b)(A); *Nat'l Mining Ass'n v. McCarthy*, 758 F.3d 243, 251 (D.C. Cir. 2014) ("The APA divides agency action, as relevant here, into three boxes: legislative rules, interpretive rules, and general statements

of policy. … Legislative rules generally require notice and comment, but interpretive rules and general statements of policy do not."). "If an agency engages in rule-making without the notice and comment Section 553 requires, the rule-making is subject to vacatur under Section 706(2)(D) on the ground that it was issued 'without observance of procedure required by law.'" *Nat. Res. Def. Council, Inc. v. U.S. Dep't of the Interior*, 397 F. Supp. 3d 430, 452 (S.D.N.Y. 2019); 5 U.S.C. § 706(2)(D).

Distinguishing between legislative rules, interpretive rules, and general statements of policy "turns out to be quite difficult and confused." *McCarthy*, 758 F.3d at 251. There are, however, general principles to guide the court's inquiry. If a rule alters the rights or obligations of regulated parties "or produces other significant effects on private interests," it is legislative and therefore must be adopted via notice-and-comment rulemaking.[4] *White v. Shalala*, 7 F.3d 296, 303 (2d Cir. 1993) (citation omitted); *see also Chrysler Corp. v. Brown*, 441 U.S. 281, 302, (1979) (legislative rules "affect[] individual rights and obligations" (citation omitted)); *Lewis–Mota v. Sec'y of Labor*, 469 F.2d 478, 482 (2d Cir. 1972). By contrast, a rule that "educat[es] . . . agency members in the agency's work" or is "directed primarily at the staff of an agency describing how it will conduct agency discretionary functions" is considered a general policy statement. *Noel v. Chapman*, 508 F.2d 1023, 1030 (2d Cir. 1975); *see also McCarthy*, 758 F.3d at 252 ("An agency action that merely explains how the agency will enforce a statute or regulation—in other words, how

---

[4] A legislative rule can also be exempted from the notice-and-comment process if "the agency for good cause finds . . . that notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest." 5 U.S.C. § 553(b)(B).

it will exercise its broad enforcement discretion or permitting discretion under some extant statute or rule—is a general statement of policy.").

The Yemen Guidance is expressly framed as a policy memorandum, the purpose of which is to "provide guidance to USCIS Officers who adjudicate family-based petitions supported by Yemeni relationship documents." (AR at 001.) Plaintiffs offer no argument as to why the court should deem the Yemen Guidance a rule, subject to the procedural requirements of rulemaking, rather than a statement of policy, and the court sees no basis on which to reach such a conclusion. Because the Yemen Guidance is clearly a policy statement that explains how the agency will exercise its discretion, rather than a rule that alters regulated parties' rights and obligations, Defendants did not act "without observance of procedure required by law" by issuing it.

### 3. Section 706(1)

Plaintiffs ask the court to compel Defendants to adjudicate their petitions, which they allege have been unreasonably delayed. The APA provides that "within a reasonable time, each agency shall proceed to conclude a matter presented to it." 5 U.S.C. § 555(b). It also requires that courts shall "compel agency action unlawfully withheld or unreasonably delayed." *Id.* § 706(1). A claim asserting unreasonable delay "can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004) (emphasis in original).

The court's analysis of Plaintiffs' unreasonable delay APA claim differs for two groups of Plaintiffs: those whose petitions have already been adjudicated, and those whose petitions remain pending.

a.  Plaintiffs Whose Form I-130 Petitions Have Been Ad-
judicated

Defendants argue that Plaintiffs' APA claim for unreasonable de-
lay is moot with respect to those Plaintiffs whose Form I-130
petitions have already been adjudicated—a group that comprises
the majority of the Plaintiffs in this case. "Under the doctrine of
mootness, the plaintiff's personal stake in the outcome of the lit-
igation must be extant at all stage of review, not merely at the
time the complaint is filed." *Stagg P.C. v. U.S. Dep't of State*, 983
F.3d 589, 601 (2d Cir. 2020). "When the plaintiff no longer has
a legally cognizable interest in the outcome of the action, the case
becomes moot and is no longer a 'case' or 'controversy' for the
purposes of Article III." *Id.* "Under Article III of the U.S. Constitu-
tion, when a case becomes moot, the federal courts lack subject
matter jurisdiction over the action." *Doyle v. Midland Credit
Mgmt., Inc.*, 722 F.3d 78, 80 (2d Cir. 2013).

The Second Circuit has explained that "if an event occurs while
a case is pending on appeal that makes it impossible for the court
to grant any effectual relief whatever to a prevailing party, [the
court] must dismiss the case" as moot "rather than issue an advi-
sory opinion." *ABC, Inc. v. Stewart*, 360 F.3d 90, 97 (2d Cir.
2004); *see also Barrett v. United States*, 105 F.3d 793, 794 (2d
Cir. 1996). This court has specifically held that when a plaintiff
asks the court to compel USCIS to adjudicate an application that
is no longer pending at the time of the court's review, that claim
is moot and USCIS's adjudication of the application divests the
court of subject matter jurisdiction. *See Song v. Sessions*, 17-cv-
1682 (NGG), 2018 WL 5084843, at *2 (E.D.N.Y. Oct. 18, 2018).

Plaintiffs do not contest that most of the Form I-130 petitions at
issue in this case have already been adjudicated. However, they
argue that the court may nonetheless exercise jurisdiction over
their unreasonable delay claim because either of two exceptions

to the mootness doctrine applies. (Opp. at 15-19.) First, they argue that their claims regarding already adjudicated petitions are not moot because they are "capable of repetition yet evading review." (*Id*. at 15-18.) Second, they argue that those claims are not moot because Defendants' adjudication of the petitions amounts to a voluntary cessation of the challenged practice. (*Id*. at 18-19.) Both of Plaintiffs' arguments are unavailing.

An established "exception to the mootness doctrine applies where (1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the complaining party will be subject to the same action again." *In re Grand Jury Proceeding*, 971 F.3d 40, 53 (2d Cir. 2020). Plaintiffs argue that both criteria are met because the relevant petitions were adjudicated before Plaintiffs' claims could be fully litigated and because the Petitioner-Plaintiffs could conceivably bring subsequent Form I-130 petitions on behalf of other family members from Yemen. (Opp. at 16-17.) As Defendants point out, there is some irony to Plaintiffs' argument that USCIS adjudicated their petitions too quickly for them to fully litigate their claims that USCIS was adjudicating their petitions too slowly. But litigation is often lengthy, and it is feasible that the time to adjudicate an immigration application, in certain contexts, could be so long as to constitute an unreasonable delay but still sufficiently brief to evade judicial review.

The bigger problem for Plaintiffs is the "capable of repetition" aspect of the exception. Although it is true that U.S. citizens and LPRs may bring multiple Form I-130 petitions on behalf of different qualifying family members, Plaintiffs fail to establish that there is a reasonable expectation that these specific individuals will bring subsequent Form I-130 petitions on behalf of additional qualifying family members, and further that USCIS will fail to timely adjudicate such petitions in the same manner alleged here. As the First Circuit has explained, in holding that plaintiffs'

challenge to practices for adjudicating "immediate relative" visa petitions was moot, "[u]nlike pregnant women who are likely to conceive again or [children with disabilities] who are virtually certain to require placement in successive school years, the plaintiffs have not shown … that they have any prospect of seeking the same relief anew…. [T]he plaintiffs cannot credibly argue that they are likely to be exposed fresh to the same sort of bureaucratic gridlock that drove them to the courthouse door on this occasion." *Cruz v. Farquharson*, 252 F.3d 530, 534-35 (1st Cir. 2001) (citing *Roe v. Wade*, 410 U.S. 113, 125 (1973) and *Caroline T. v. Hudson Sch. Dist.*, 915 F.2d 752, 757 (1st Cir. 1990)). Where, as here, Plaintiffs merely demonstrate the possibility of repetition, rather than its probability, they fail to establish the kind of exceptional situation that renders the mootness doctrine inappropriate.

Plaintiffs also argue that the other recognized exception to the mootness doctrine, the "voluntary cessation" exception, applies. "It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *Friends of the Earth, Inc. v. Laidlaw Environ. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000). If the court were to dismiss a case as moot under such circumstances, it "would permit a resumption of the challenged conduct as soon as the case was dismissed." *Am. Freedom Def. Initiative v. Metro. Trans. Auth.*, 815 F.3d 105, 109 (2d Cir. 2016). When the alleged basis for mootness is the defendant's voluntary cessation, the case will be deemed moot only "if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur" after the conclusion of litigation. *Friends of the Earth*, 528 U.S. at 189.

Plaintiffs argue that Defendants have adjudicated their petitions in order to evade judicial review of their challenged conduct, and

they suggest that such adjudication amounts to a voluntary cessation. But by adjudicating Plaintiffs' petitions, Defendants have not thwarted Plaintiffs ability to obtain relief; rather, they have provided Plaintiffs with the very relief they seek to compel through litigation. Defendants' adjudication of Plaintiffs' petitions is final (assuming that no evidence of fraud subsequently emerges), and thus they cannot resume the challenged conduct—unreasonable delays in adjudicating Plaintiffs' petitions—upon the conclusion of this litigation. Accordingly, the voluntary cessation exception to mootness is inapposite.

Because those Plaintiffs whose petitions have already been adjudicated lack a legally cognizable interest in the outcome of their unreasonable delay claims, and because neither of the established exceptions to the mootness doctrine applies, the court finds that Plaintiffs' claims under Section 706(1) of the APA are moot with respect to this group of Plaintiffs.

> b. Plaintiffs Whose Form I-130 Petitions Have Not Been Adjudicated

The court does have jurisdiction over the unreasonable delay claims brought by the comparatively small group of Plaintiffs whose petitions have not yet been adjudicated—approximately nineteen individuals, who raise claims in connection with approximately nine pending petitions, as of the date Defendants filed their Reply Brief, and perhaps a smaller group now.[5]

Again, "aclaim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required* to take." *Norton*, 542 U.S. at 64. Courts evaluate APA claims that agencies have unreasonably delayed in adjudicating plaintiffs' pending administrative matters by applying a

---

[5] *See* App'x II to Houghton Decl. (Dkt. 66-2) at ECF pp. 12-13; Reply at 13-14.

six-part standard set forth in *Telecommunications Research & Action Center v. FCC* ("*TRAC*"), 750 F.2d 70 (D.C. Cir. 1984). Under that standard:

> (1) the time agencies take to make decisions must be governed by a "rule of reason"; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*TRAC*, 750 F.2d at 80.

"In applying the 'competing priority' *TRAC* factor, the D.C. Circuit has held that it is appropriate to refuse to grant relief, even though all the other factors considered in *TRAC* favor it, where a judicial order putting the petitioner at the head of the queue would simply move all others back one space and produce no net gain." *Yan Chen v. Nielsen*, No. 17-CV-7157 (BMC), 2018 WL 1221130, at *2 (E.D.N.Y. Mar. 8, 2018) (citing *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1100 (D.C. Cir. 2003)). In such contexts, courts recognize that agencies must "juggle competing duties" and as a result they will generally not find a Section 706(1) violation in the absence of "evidence the agency … treated the petitioner[s] differently from anyone else, or that officials not working on [plaintiffs'] matters were just twiddling their thumbs." *Mashpee Wampanoag Tribal Council*, 336 F.3d at 1100-01. "[T]he competing priority issue is weighty"

where "[t]here are many other applicants who have waited even longer than" the plaintiffs and "to grant [them] priority is to push [other applicants] further back in line when the only difference between them is that [the plaintiffs have] brought a federal lawsuit." *Yan Chen*, 2018 WL 1121130, at *2.

As such, courts in this circuit have repeatedly found that delays of as long as five years in USCIS's adjudication of immigration benefits are not unreasonable. *See id.* ("[T]he mere delay of roughly four and a half years is an inadequate ground to grant either mandamus or APA relief."); *Hoo Loo v. Ridge,* No. 04-cv-5553 (DLI), 2007 WL 813000, at *4 (E.D.N.Y. Mar. 14, 2007) (concluding that delay of over four years was not unreasonable); *Saleh v. Ridge*, 367 F. Supp. 2d 508, 513 (S.D.N.Y. 2005) (finding delay of almost five years, while "not insubstantial," was not unreasonable "in light of the volume of applications … in the system" and limits on how many applications could be granted). They have also denied unreasonable delay claims where, "apart from the passage of time, [Plaintiffs] … give[] no reason for the [c]ourt to compel [USCIS] to devote immediate attention" to their applications, "particularly given [USCIS's] limited resources and substantial caseload." *Espin v. Gantner*, 381 F. Supp. 2d 261, 266 (S.D.N.Y. 2005).

Of the pending applications, none appears to have been filed earlier than July 11, 2016. (*See* Am. Compl. ¶¶ 186, 204, 246, 359, 401, 419, 425; App'x II to Houghton Decl. (Dkt. 66-2) at ECF pp. 12-13.)[6] Thus, these applications have all been pending for fewer

---

[6] The petition filed by Plaintiff Ahmed Shariff on behalf of Plaintiff Mohammed Shariff was allegedly filed in May 2006, but Defendants state—and Plaintiffs do not dispute—that the petition was approved in 2007 but reopened in 2017 through the "consular return" process, which allows for the re-adjudication and possible revocation of approved petitions when new information casting doubt on eligibility comes to light. (*See* Am. Compl. ¶ 228; App'x II to Houghton Decl. (Dkt. 66-2) at ECF p. 13; Mem.

than five years, and had been pending for fewer than two years when Plaintiffs filed this action. Other than the passage of time, Plaintiffs have given the court no basis on which to conclude that the process of adjudicating their petitions has been unreasonably prolonged or delayed. Moreover, the competing priority factor weighs strongly against relief that would permit Plaintiffs to circumvent the line and receive final decisions sooner than other Form I-130 applicants who are similarly awaiting adjudication of their petitions. Accordingly, the court grants summary judgment for Defendants' on Plaintiffs' APA unreasonable delay claims, insofar as the court has jurisdiction to review those claims.

### B. Mandamus Claim

Plaintiffs petition this court for a writ of mandamus compelling Defendants to "properly adjudicate in good faith" their Form I-130 petitions. (Am. Compl. ¶¶ 512-20.) Plaintiffs' mandamus claims seek the same relief as their unreasonable delay claims under the APA: a judicial order directing Defendants to immediately adjudicate Plaintiffs' petitions. Thus, as with the unreasonable delay claims, the court's analysis of the mandamus claims is bifurcated according to the status of Plaintiffs' petitions. First, as to Plaintiffs who seek the adjudication of petitions that USCIS has already adjudicated, the court cannot order an agency to take an action that it has already taken. *See Lihua Jiang v. Clinton*, No. 08-cv-4477 (NGG), 2011 WL 5983353, at *3 (E.D.N.Y. Nov. 28, 2011) ("Defendants discharged any non-discretionary duty they may have owed to Plaintiff…. Plaintiff's claim is thus moot insofar as it seeks a writ of mandamus to order Defendants to perform duties they have already performed.") The court therefore finds that Plaintiffs' mandamus claims are moot for the reasons explained above. Because the court lacks jurisdiction to

---

at 9, 18, 26.) Thus, Mr. Shariff's petition has been pending only since 2017, not since 2006.

review a non-justiciable controversy, it dismisses Plaintiffs' mandamus claims for lack of subject matter jurisdiction.

Second, as to the remaining Plaintiffs who are awaiting a final resolution of their Form I-130 petitions, Plaintiffs fail to state an actionable claim for a writ of mandamus. Under the Mandamus Act, "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. "The action that the plaintiff seeks to compel must be subject to positive command, plainly described, and free from doubt." *Keane v. Chertoff*, 419 F. Supp. 2d 597, 599 (S.D.N.Y. 2006). To obtain mandamus relief, a plaintiff must show that "(1) there is a clear right to the relief sought; (2) the Government has a plainly defined and peremptory duty to perform the act in question; and (3) there is no other adequate remedy available." *Benzman v. Whitman*, 523 F.3d 119, 133 (2d Cir. 2008). "The extraordinary remedy of mandamus under 28 U.S.C. § 1361 will issue only to compel the performance of a clear nondiscretionary duty." *Pittston Coal Grp. v. Sebben*, 488 U.S. 105, 121 (1988).

Defendants clearly have a non-discretionary duty to adjudicate Plaintiffs' Form I-130 petitions at some point in time, but they have no "plainly defined and peremptory duty" to adjudicate them within any particular time frame. Thus, "Plaintiff[s] do[] not have a clear right to an immediate adjudication before all of the required background checks have been completed, nor is there a statutory or regulatory right to adjudication within a specified time," and "[D]efendants have no clear duty to increase the pace at which they are acting." *Orlov v. Howard*, 523 F. Supp. 2d 30, 38 (D.D.C. 2007). Moreover, Plaintiffs' mandamus claims are duplicative of their APA unreasonable delay claims: in the event that Plaintiffs *did* have a clear right to an immediate adjudication

and Defendants *did* have a clear duty to adjudicate within a spec-ified time frame, Section 706(1) of the APA would provide Plaintiffs with an adequate remedy. Because Plaintiffs cannot es-tablish any, let alone all, of the essential prerequisites for a writ of mandamus, they fail to state a claim for relief.

## C.  Declaratory Judgment

Plaintiffs bring a claim under the Declaratory Judgment Act, 28 U.S.C. § 2201, seeking "a declaration … [that] Defendants have severally and jointly failed to discharge their mandated official duties" and "finding Defendants' Yemeni I-130 [a]djudication procedures discriminatory and contrary to law." (Am. Compl. ¶¶ 533-34.)

"By the Declaratory Judgment Act, Congress sought to place a remedial arrow in the district court's quiver; it created an oppor-tunity, rather than a duty, to grant a new form of relief to qualifying litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995). "Consistent with the nonobligatory nature of the remedy, a district court is authorized, in the sound exercise of its discre-tion, to stay or to dismiss an action seeking a declaratory judgment before trial or after all arguments have drawn to a close." *Id*. The Declaratory Judgment Act is not a "source of sub-stantive rights." *Dow Jones & Co. v. Harrods, Ltd.*, 237 F. Supp. 2d 394, 431 (S.D.N.Y. 2002). "Nor does the statute impose any duty upon the courts to grant this remedy." *Ahmed v. Cissna*, 327 F. Supp. 3d 650, 672 (S.D.N.Y. 2018), *aff'd sub nom. Ahmed v. Cuccinelli*, 792 F. App'x 908 (2d Cir. 2020).

As explained above, Plaintiffs have not provided the court with a sound basis to conclude that Defendants have failed to discharge any nondiscretionary official duties or that the Yemen Guidance is discriminatory or unlawful. Accordingly, the court rejects Plaintiffs' request for a declaration to that effect and dismisses

Plaintiffs' declaratory judgment action for failure to state a claim for relief.

### D. Constitutional Claims

Plaintiffs' Amended Complaint raises four causes of action alleging the violation of Plaintiffs' constitutional rights. First, Plaintiffs allege that Defendants' delay in adjudicating their petitions deprives them of a liberty interest "in making personal choices regarding family matters" that is protected by the Due Process Clause of the Fifth Amendment. (Am. Compl. ¶¶ 536-39.) Second, Plaintiffs allege that Defendants have infringed on their procedural due process rights under the Fifth Amendment. (*Id.* ¶¶ 540-44.) Third, Plaintiffs allege that Defendants violated their rights to Equal Protection under the Fifth Amendment by discriminating against them on the basis of their "Yemen ethnicity and Islamic faith." (*Id.* ¶¶ 545-52.) Fourth, Plaintiffs allege that Defendants violated the Establishment Clause of the First Amendment by "preferring one religion over another." (*Id.* ¶¶ 553-59.) As explained below, the court finds that Plaintiffs fail to state a cause of action for a constitutional violation under any of these theories.

### 1. Substantive Due Process Claim

Plaintiffs assert that the alleged delays in adjudicating their petitions have impermissibly infringed on their constitutionally "protected liberty interest to family integrity and privacy" by preventing close family members from living together, insofar as they are eligible to do so under U.S. immigration laws. (Opp. at 12-15.)

The Supreme Court has interpreted the Due Process Clauses of the Fifth and Fourteenth Amendments "to include a substantive component, which forbids the government to infringe certain fundamental liberty interests at all, no matter what process is

provided, unless the infringement is narrowly tailored to serve a compelling state interest." *Reno v. Flores*, 507 U.S. 292, 301-02 (1993). "[N]arrow tailoring is required only when fundamental rights are involved," whereas "[t]he impairment of a lesser interest … demands no more than a 'reasonable fit' between governmental purpose … and the means chosen to advance" it. *Id.* at 305.

Plaintiffs' argument invokes certain recognized constitutional rights pertaining to familial unity and integrity, including the right to marriage, and suggests that the right to cohabitate with one's family is a logical extension of those rights. (Opp. at 12-14.) But Plaintiffs point to no case law at all, let alone case law binding on this court, that recognizes a fundamental constitutional right to cohabitate with one's family members within the United States. Rather, as the Ninth Circuit has explained, the theory that individuals have "a fundamental right to reside in the United States with [their] non-citizen relatives … runs headlong into Congress' plenary power over immigration." *Gebhardt v. Nielsen*, 879 F.3d 980, 988 (9th Cir. 2018). Plaintiffs' "generic right to live with family is far removed from the specific right to reside in the United States with non-citizen family members." *Id.*; *see also Alharbi v. Miller*, 368 F. Supp. 3d 527, 570-71 (E.D.N.Y. 2019) (finding that plaintiffs "do not have a fundamental right to have or raise their children in the United States"). Because the interest in familial unity that Plaintiffs invoke is not one that has been recognized as fundamental under the U.S. Constitution, and because the time taken by USCIS to adjudicate Form I-130 petitions, including those of petitioners, bears a clear relationship to the need for USCIS to correctly determine beneficiaries' visa eligibility while conserving public resources, Plaintiffs have failed to state a cause of action for the deprivation of their substantive due process rights.

2. Procedural Due Process Claim

Plaintiffs also allege that Defendants violated their Fifth Amendment rights to procedural due process, on the theory that USCIS's policies and procedures for adjudicating Plaintiffs' Yemeni Form I-130 applications are "nothing more than an exercise in futility" that prevents eligible Plaintiffs from being able to obtain visas to which they are entitled. (Opp. at 11-12.)

"Due process is flexible and calls for such procedural protections as the particular situation demands." *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976). "Due process requires that an individual be given notice and an opportunity to be heard prior to the state's permanent deprivation of his property interest." *Chunn v. Amtrak*, 916 F.3d 204, 207 (2d Cir. 2019). "To have a property interest in a benefit, a person … must … have a legitimate claim of entitlement to it." *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). "[A] benefit is not a protected entitlement if government officials may grant or deny it in their discretion." *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005).

At least one circuit court has found that the "grant of an I-130 petition for immediate relative status is a nondiscretionary decision" and therefore "a right to which citizen applicants are entitled as long as the petitioner and spouse beneficiary meet the statutory and regulatory requirements for eligibility"—in other words, a "protected interest [that] is entitled to the protections of due process." *Ching v. Mayorkas*, 725 F.3d 1149, 1156 (9th Cir. 2013). But even if Plaintiffs have a protected interest in the grant of their Form I-130 petitions, assuming that they carry their burden of establishing eligibility by a preponderance of the evidence, there is no basis for their assertion that Defendants have deprived them of that interest. Their argument is not that their applications have been erroneously denied, but rather that they

are "not able to avail themselves" of the benefits to which they are entitled because of USCIS's unreasonable delays in adjudicating their petitions. (Opp. at 11-12.)

The premise of Plaintiffs' argument is belied by the undisputed fact that most of Plaintiffs' petitions *have* been adjudicated, and that most of those petitions were in fact adjudicated favorably. Thus, insofar as Plaintiffs attempt to claim that Defendants consistently or regularly deprive Yemeni beneficiaries and their petitioning family members of due process without law in adjudicating Form I-130 petitions, that claim is devoid of factual support. Nor has any specific subset of Plaintiffs pleaded facts sufficient to support a procedural due process claim. Those Plaintiffs whose applications have been approved have received the benefit to which they are entitled, and they have therefore suffered no deprivation. Those whose petitions were denied have not plausibly alleged that those denials were erroneous, and therefore the court has no basis to conclude that they were entitled to the benefits they sought. The handful of Plaintiffs whose petitions remain pending have failed to adequately allege either that they are entitled to the grant of those petitions or that the mere pendency of their petitions constitutes a deprivation of that benefit. Plaintiffs therefore fail to state a claim for violation of procedural due process.

### 3.  Equal Protection Claim

Plaintiffs contend that the Defendants' policies and practices for adjudicating Form I-130 petitions on behalf of Yemeni beneficiaries violate their rights to equal protection under the Fifth Amendment by discriminating against Plaintiffs on the basis of protected characteristics such as race, national origin, and religion. (Am. Compl. ¶¶ 547-49; Opp. at 8.)

While the Fifth Amendment does not contain an equal protection clause, "it does forbid discrimination that is so unjustifiable as to

be violative of due process." *Sessions v. Morales-Santana*, 137 S. Ct. 1678, 1686, n.1 (2017) (quoting *Weinberger v. Wiesenfeld*, 420 U.S. 636, 638, n. 2 (1975)). The Supreme Court's approach to Fifth Amendment equal protection claims is "precisely the same as to equal protection claims under the Fourteenth Amendment." *Id.* For Plaintiffs to successfully plead a Fifth Amendment claim for discrimination, they must allege facts containing one of the following three elements: "(1) that a law or policy is discriminatory on its face; (2) that a facially neutral law or policy has been applied in an intentionally discriminatory manner; or (3) that a facially neutral statute or policy has an adverse effect and that it was motivated by discriminatory animus." *Alharbi v. Miller*, 368 F. Supp. 3d 527, 563 (E.D.N.Y. 2019).

Plaintiffs do not allege that the Yemen Guidance is facially discriminatory; rather, they suggest that Plaintiffs were subjected to an unduly rigorous and lengthy adjudication process because of "animus and impermissible discriminatory motives." (Opp. at 8.) But Plaintiffs' only specific factual allegations of animus or intentional discrimination evoke Islamophobic rhetoric in statements and actions attributable to former President Trump and his administration. (Am. Compl. ¶¶ 484-95.) Those statements and actions do not specifically relate to the Yemen Guidance or the adjudication of Form I-130 petitions. Moreover, USCIS issued and implemented the Yemen Guidance in 2012, during the administration of former President Barack Obama and prior to any of the statements and actions that allegedly support Plaintiffs' claims of discriminatory animus. Plaintiffs fail to suggest any plausible factual nexus between the alleged discriminatory motives of the individual Trump administration Defendants and the

challenged policy, which was implemented during the prior presidential administration. Plaintiffs therefore fail to state a claim for discrimination in violation of the Fifth Amendment.[7]

### 4. Establishment Clause Challenge

Plaintiffs claim that Defendants have violated the Establishment Clause of the First Amendment by subjecting Form I-130 petitions brought by and on behalf of Muslim individuals to higher burdens of proof than those petitions brought by or on behalf of non-Muslims. "[A]lthough foreign nationals seeking admission have no constitutional right to entry, [the Supreme] Court has engaged in a circumscribed judicial inquiry when the denial of a visa allegedly burdens the constitutional rights of a U.S. citizen." *Trump v. Hawaii*, 138 S. Ct. 2392, 2420 (2018). In such cases, courts apply rational basis review and "will uphold the policy so long as it can reasonably be understood to result from a justification independent of unconstitutional grounds." *Id.*

As discussed above, Plaintiffs' argument that their petitions were held to a more rigorous burden of proof than other Form I-130 petitions misconstrues the effect of the Yemen Guidance, which requires Plaintiffs to supply more evidentiary support than certain other Form I-130 petitioners but does not impose upon Plaintiffs a higher burden of proof. To the extent that Form I-130 petitions on behalf of Yemeni beneficiaries are adjudicated differently than petitions on behalf of beneficiaries from other countries, Defendants have articulated a logical justification grounded in the unreliability of Yemen's official processes for

---

[7] To the extent Plaintiffs allege discrimination against Defendants in their individual capacities, under a *Bivens* theory, they also fail to state a claim for relief. (*See* Am. Compl. ¶¶ 550-51.) Plaintiffs do not even allege that any of the Defendants were personally involved, in any manner, in the development of the Yemen Guidance or the adjudication of their Form I-130 petitions.

maintaining and issuing civil records. That justification is unrelated to matters of religious faith or affiliation, and it provides a rational explanation for the challenged policies and practices. Accordingly, Plaintiffs fail to state a claim under the Establishment Clause of the First Amendment.

### E.  Conspiracy to Deprive of Civil Rights

Plaintiffs bring a claim under 42 U.S.C. § 1985(3), which creates a right of action against persons who "conspire … for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." Plaintiffs allege that Defendants conspired to "devise[] a discriminatory Form I-130 adjudicative program for petitioners and/or beneficiaries of Arab/Yemen background," for the purpose of depriving such petitioners and beneficiaries of equal protection. (Am. Compl. ¶ 563.) They cite, as factual support for their claim, a series of Islamophobic statements by former President Trump and policies implemented by his administration.

Plaintiffs do not specify whether they assert this claim against Defendants in their official or individual capacities. Insofar as Plaintiffs seek to recover against Defendants in their official capacities, the claim is barred by sovereign immunity. *See Haynes v. Quality Markets*, 307 F. App'x 473, 475 (2d Cir. 2008) (affirming dismissal of § 1985 claim for which "the United States has not waived sovereign immunity"). The court therefore construes Plaintiffs' claim as one brought against Defendants in their individual capacities. But Plaintiffs fail to allege any facts to suggest that Defendants were personally involved with developing the Yemen Guidance or other relevant policies and practices. As noted above, the Yemen Guidance was developed and implemented prior to former President Trump's tenure, and Plaintiffs

fail to allege any plausible nexus between that adjudication pro-
gram and the Defendants' subsequent Islamophobic remarks and
policies. Plaintiffs therefore fail to state a claim for conspiracy to
deprive them of their civil rights.

###    F.   FRCP 72 Appeal

Finally, Plaintiffs ask this court to reverse Judge Pollak's March
17, 2020 order denying Plaintiffs' motion for additional discov-
ery. Plaintiffs previously moved for reconsideration of Judge
Pollak's order. (*See* Mot. for Recons..) Judge Pollak denied the
reconsideration motion on November 24, 2020. (*See* Reconsider-
ation M&O.) On January 8, 2021, Plaintiffs filed a motion with
this court, styled as an appeal from Judge Pollak's order denying
additional discovery pursuant to Federal Rule of Civil Procedure
72(a) and 28 U.S.C. § 636(b)(1).

Under 28 U.S.C. § 636(b)(1)(a), the court may "reconsider any
pretrial matter" decided by a magistrate judge "where it has been
shown that the magistrate judge's order is clearly erroneous or
contrary to law." Federal Rule of Civil Procedure 72(a) provides
that parties must object to a magistrate judge's order regarding a
non-dispositive pretrial matter within fourteen days, and that
"[t]he district judge in the case must consider timely objections"
under the "clearly erroneous or … contrary to law" standard.

Plaintiffs style their motion as an appeal from Judge Pollak's
March 17, 2020 order denying their discovery motion, rather
than as an appeal from Judge Pollak's November 24, 2020 order
denying their reconsideration motion. The parties dispute
whether Plaintiffs' appeal is timely: Defendants argue that under
Rule 72(a) Plaintiffs' window to object to the March 17, 2020
order expired fourteen days after it was issued, while Plaintiffs
contend that their motion for reconsideration effectively tolled
the March 17, 2020 order by rendering it non-final. (Appeal Opp.
at 3-4; Appeal Reply at 2-4.)

Because this order grants in full Defendants' motion for dismissal and summary judgment, all claims raised in Plaintiffs' Amended Complaint are hereby disposed of, and no further discovery will occur in this case regardless of the timeliness and merits of Plaintiffs' Rule 72 appeal. Accordingly, the court denies Plaintiffs' appeal of Judge Pollak's order as moot.

## IV.   CONCLUSION

For the reasons set forth above, the court:

- dismisses Plaintiffs' Mandamus Act and APA unreasonable delay claims for lack of subject matter jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(1), insofar as they pertain to Plaintiffs whose Form I-130 petitions have already been adjudicated;

- grants summary judgment to Defendants on all remaining APA claims, pursuant to Federal Rule of Civil Procedure 56; and

- dismisses the remaining Plaintiffs' Mandamus Act claims and all Plaintiffs' claims under the Fifth Amendment, First Amendment, Declaratory Judgment Act, and 42 U.S.C. § 1985 for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6).

Accordingly, Defendants' (Dkt. 66) Motion for Summary Judgment and Motion to Dismiss is GRANTED with prejudice. Additionally, Plaintiffs' (Dkt. 86) Appeal of Judge Pollak's orders regarding discovery is DENIED as moot. The Clerk of Court is respectfully directed to close the case.

SO ORDERED.

Dated:    Brooklyn, New York
           March 16, 2021

    /s/ Nicholas G. Garaufis
NICHOLAS G. GARAUFIS
United States District Judge